STATE OF WEST VIRGINIA

*v.*

LESTER ROLLINGS HAINES

(No. 13168)

Submitted October 3, 1972.     Decided November 28, 1972.

*Henry Clay Hart, Jr.,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, Richard E. Hardison,* Assistant Attorneys General, for defendant in error.

KESSEL, JUDGE:

This criminal case is before the Court on a writ of error and supersedeas granted to an order of the Circuit Court of Morgan County, by which order the circuit court entered judgment upon a jury verdict finding Lester Rollings Haines, the plaintiff in error herein, guilty as alleged in a joint indictment which charged Lester Rollings Haines, David Julian Haines and Donald Douglas Lafollette with a crime defined in Code, 1931, 61-2-12, as amended, which is commonly referred to as armed robbery. By its final judgment entered on the

jury verdict, the trial court sentenced Lester Rollings Haines to confinement in the penitentiary of this state for a period of ten years.

The joint indictment against the plaintiff in error, hereinafter called the defendant, and the other co-indictees charges that they made a felonious assault upon Austin B. Greer by putting him in bodily fear and thereby stole from his person United States currency in the amount of $5. The principal part of the indictment for the purpose of this opinion is as follows:

> "* * * that Lester Rollings Haines, David Julian Haines, and Donald Douglas Lafollette, on the 13th day of February, 1971, in said County of Morgan, in and upon one Austin B. Greer an assault did feloniously make, and him, the said Austin B. Greer did then and there feloniously put in bodily fear, and United States Currency of the value of five dollars, the property of the said Austin B. Greer, and lawfully in his control and custody, from the person of the said Austin B. Greer and against his will, then and there feloniously and violently did steal, take and carry away, against the peace and dignity of the State. * * *"

The defendant, who was tried separately from his co-indictees, contends in one of his assignments of error that, at the most, he was only an aider and abettor or a principal in the second degree, and that Donald Douglas Lafollette, his co-indictee, who was the principal in the first degree, was found guilty by a jury of only assault and battery and was sentenced to confinement in the county jail for a period of one year and that an order of nolle prosequi was entered to the indictment of David Julian Haines, the other co-indictee, who is a brother of the defendant, and who was present at the scene of the crime charged in the indictment.

Another assignment of error is that the trial court erred in permitting the defendant to be tried as an aider and abettor when he was indicted as a principal in the

first degree. A third assignment of error is that the verdict of the jury is contrary to the law and evidence.

The statute under which the indictment was drawn is Code, 1931, 61-2-12, as amended, and reads, in part, as follows:

> "If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years."

With reference to the punishment of principals in the second degree and accessories who are not deemed accessories after the fact, Section 6, Article 11, Chapter 61, of the Code, 1931, provides:

> "In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; * * *"

This case was tried upon the theory that the defendant was a principal in the second degree.

In the case of *State v. Wamsley*, 109 W.Va. 570, 156 S.E. 75, Wamsley and Martin were jointly indicted and charged with the crime of rape. The evidence disclosed that Wamsley committed the overt act upon the prosecuting witness and that Martin, his co-indictee, was present aiding and abetting in the commission of the act. The Court held in the first point of the syllabus that "Two or more persons may be charged in an indictment with the commission of a crime, such as rape, which from its nature could in fact have been committed by but one, those who are present aiding and abetting its commission, being principals of the second degree, and indictable and punishable, under our Code and practice, as principals of the first degree."

The companion case to the *Wamsley* case is *State v. Martin,* 112 W.Va. 88, 163 S.E. 764. The single point of the syllabus in that case holds that "Where, under an indictment charging two separate individuals with rape, one has been convicted of the crime charged, the other may be tried thereunder as a principal in the second degree, and, if convicted, punished as the principal felon." In the *Martin* case, counsel for the defendant contended that if Martin was a principal in the second degree, then the indictment should allege that he aided and abetted Wamsley, the principal in the first degree. This Court, however, held otherwise. We hold, therefore, that the indictment in this case against the defendant, Lester Rollings Haines, is good and that he was properly placed on trial upon the charges contained therein.

The contention of the defendant that he was convicted of a greater offense than the principal in the first degree and received a sentence of ten years in the penitentiary wherein the principal in the first degree was found guilty of assault and battery and sentenced to one year in jail is not a valid one. The test is not whether the principal in the second degree received a more severe sentence than the principal in the first degree, but whether or not the principal in the first degree could have, under the law, received a penalty equal to that imposed upon the principal in the second degree. *State v. Loveless,* 139 W.Va. 454, 465-66, 80 S.E.2d 442, 449; Annot., 24 A.L.R. 570, 607-08. Code, 1931, 61-11-6, provides that the principal in the second degree shall be punished as if he were the principal in the first degree.

Two defendants who are indicted jointly but elect to be tried separately may have different jury verdicts as the result of different juries considering and weighing the evidence. This could necessarily result in different sentences and the principal in the second degree could receive, under the law, a more severe sentence than the principal in the first degree.

The defendant further contends that the verdict of the jury was contrary to the law and the evidence. In order to

determine this we should look further into the facts as presented to the jury.

Austin Greer, the prosecuting witness, testified that he was proceeding in his automobile on a narrow, one-lane road toward Route 522 when another automobile approached from the opposite direction. The road was icy and slippery and too narrow to allow two vehicles to pass. According to his testimony, Greer was alone in his automobile. After the other automobile stopped, Greer got out of his automobile and went to the other automobile and said: "I'm stuck. I can't get out of here." The defendant was the driver of the other automobile.

Greer testified that as he got back into his automobile Donald Douglas Lafollette, who was riding in the back seat of the other automobile, got out and started shaking Greer's car. At that time Greer assumed that Lafollette was trying to help him move his car back so Greer put his car in gear and moved it back some six or eight inches. After moving the automobile, Greer testified that: "* * * there's no reason why he couldn't have went on other than the fact that it was slippery and icy. I thought they were going on. They acted like they were going on and they didn't go on. And in a few minutes I thought well, they'll go on and I can get out and a few minutes later that Don [Lafollette] came up to the car and said, he said, 'I want some money.' * * * 'To get some beer.'"

Greer further testified that, when he replied that he had no money, Lafollette struck him and the defendant came and got Lafollette and said: "That's enough" or "Come on; that's enough." The defendant and Lafollette got back in their automobile and acted as if they were going to leave, when according to Greer's testimony, Lafollette jumped out of the car and again demanded some money with which to buy beer and again struck Greer. Greer further testified as follows:

"A. So I got out of the car and Don was standing actually between the two cars. I got out of my car and went — I had a $5.00 bill in my

pocket that I had told him I didn't have any money. I had given him some change about I'd say a couple of pennies and I said, 'Here. See, I have no money.' So I went up to Mr. Dewey Palmer's house and knocked on the door and it was shut and while I was there I thought well if I give him this $5.00 maybe he'll go on and let me out of here. So I banged on the door at Mr. Palmer's I guess about 5 minutes.

"Q. Did anybody answer the door?

"A. No, sir.

"Q. Alright, then what happened?

"A. And then I turned around — well, in fact that Don had followed me up to the door; he was two or three feet behind me and then this gentleman got out of the car and he came up behind the boy and said something to him and then I turned around and I said, 'Here, I have some money for you'. And he said, 'Where did you get it?' and he said, 'Just a dollar bill?' and I said, 'No; it's a 5.' And he said, 'Where did you get it?' and I said, 'Well, I left it here to pay Mr. Palmer for working for me.' I told him that I had hid it there; I just told that to him."

Following this incident, Greer stated that Lafollette searched him, looking for his billfold, and struck him a third time. The prosecuting witness testified that then the "Haines boys told him [Lafollette] to get in the car. They was trying to get him in the car." Greer further testified as follows:

"A. I mean David Haines and that gentleman, they were trying to get this boy to come on. In fact, they were saying, 'Get in,' or 'Stop it,' or something to that order so I thought this is the way I can — while they were talking to this Don boy, trying to get him in the car, that gave me a chance to get away so I took the keys and put them in my pocket so they got him back in the car and that's when I jumped over the back of my car and ran down the road.

"Q. Were you scared?

"A. Yes, sir."

On cross-examination Austin Greer reiterated that the defendant tried to get Lafollette back in the car and took him by the arm and said "That's enough" or "Stop that", and that when Lafollette followed Greer to the Palmer house, the defendant tried to get Lafollette to come back to the car. The final question to Austin Greer on cross-examination and his answer thereto are as follows:

"Q. Well, Mr. Greer, when did you figure that Lester Haines was robbing you during this whole sequence? When did you think that he was robbing you?

"A. At no time."

The defendant and his co-indictees were arrested the same evening by the state police, and upon being arrested Lafollette took the five-dollar bill, which he had secured from Greer, and placed it between the legs of David Julian Haines. The police saw him do this and took the five-dollar bill. At no time, so far as the evidence discloses, was the defendant in possession of the money taken from Greer.

According to the evidence in the case of *State v. Patterson,* 109 W.Va. 588, 155 S.E. 661, the defendant, in company with one Rathbun, went to Joe Dunham's store where Rathbun entered the store and took certain articles. Patterson waited on the outside and, when given some of the stolen articles to carry, he refused them and threw them on the ground. Patterson stated that he was in an intoxicated condition at the time of the commission of the crime and did not remember what happened and that he did nothing toward committing the crime except that he was along with Rathbun. The jury found Patterson guilty of breaking and entering. This Court reversed the judgment of the lower court and set aside the verdict and awarded Patterson a new trial, holding in the only syllabus point as follows: "Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the

commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator."

In the case of *State v. Johnson,* 104 W.Va. 586, 140 S.E. 532, the defendant Johnson was convicted of owning, operating and having an interest in a moonshine still. According to the evidence, the defendant was at the scene of the still when the officers came. He explained his presence there by saying that he was on the ridge above the still gathering chestnuts when Newman and Parsons, who were his friends, called to him to come down and in response to their call, he went down to the place where Newman and Parsons were operating the still and was merely talking to them when the officers arrived. Newman and Parsons supported the defendant's testimony in every particular and admitted that they were the owners of the still and that the defendant had no interest in it and had not operated or assisted in its operation. This Court reversed the judgment of the lower court, set aside the verdict and granted the defendant a new trial, holding in the only point of the syllabus that "Where two inferences may be drawn from a circumstance, one of which is favorable and the other unfavorable to an accused, the jury may not adopt the inference against him, where the one in his favor is reasonable under all the evidence in the case."

In the case at bar, there is no evidence to the effect that the defendant did any act in the commission of the crime charged in the indictment nor is there any evidence that he consented, abetted or encouraged by act or word the commission of the crime. Mere presence is not enough without some form of participation. *State ex rel. Brown v. Thompson,* 149 W.Va. 649, 661, 142 S.E.2d 711, 719; *State v. Patterson,* 109 W.Va. 588, 155 S.E. 661; *State v. Johnson,* 104 W.Va. 586, 140 S.E. 532. See *State v. Martin,* 112 W.Va. 88, 163 S.E. 764.

We must, therefore, conclude that there is not sufficient evidence to warrant the jury in finding the defendant

guilty beyond a reasonable doubt of the charges contained in the indictment. In *State v. Calandros*, 140 W.Va. 720, 86 S.E.2d 242, this Court held in the only point of the syllabus as follows: "A judgment rendered on a verdict of guilt in a criminal case will be reversed, the verdict set aside and defendant granted a new trial where the evidence does not establish the guilt of the defendant beyond all reasonable doubt."

The defendant further contends that State's Instruction No. 3 should not have been given and was prejudicial error. In the light of our holding herein, we do not deem it necessary to consider this assignment of error.

For reasons stated in this opinion, the judgment of the Circuit Court of Morgan County is reversed, the jury verdict is set aside and the defendant is awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*