371 S.E.2d 366

**STATE of West Virginia**

v.

**Kevin Dwayne HOSELTON.**

**No. 17925.**

Supreme Court of Appeals of West Virginia.

July 22, 1988.

William E. Kiger, Darla A. Greathouse, Parkersburg, for Kevin Dwayne Hoselton.

Richard M. Richmond, Asst. Pros. Atty., Wood County, Parkersburg, for the State.

PER CURIAM:

This case is before the Court upon the appeal of Kevin Wayne Hoselton from his conviction of entering without breaking a vessel, with intent to commit larceny, pursuant to *W.Va.Code*, 61–3–12 [1923].[1] It arises from an order of the Circuit Court of Wood County which denied the accused's motion for a new trial and sentenced the appellant to the Anthony Center for Youthful Offenders.

The accused was charged in a two-count indictment as a principal in the first degree for either breaking and entering or entering without breaking a storage unit on a docked barge with intent to commit larceny. He was eighteen years old at the time, and was with several friends, each of whom was separately indicted as a principal in the first degree. The accused was

---

1. *W.Va.Code*, 61–3–12 [1923] reads, in pertinent part:

  If any person shall, at any time, break and enter, or shall enter without breaking, any ... steamboat or other boat or vessel, within the jurisdiction of any county in this State, with intent to commit a felony or any larceny, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years. . . .

convicted of entering without breaking, as charged in the indictment.[2]

The only evidence used to link the accused to the crime was his voluntary statement.[3] The pertinent answers given by the accused in his voluntary statement were, as follows:

Q. Were you with some individuals that broke into the barge?

A. Yes, sir.

Q. Once you got to the barges, what happened?

A. We all walked up on that, and I was standing outside there. Mike, he tried to get the big door open, and he couldn't do it.

Q. M[ ... ] A[ ... ]?

A. Yes, sir. And I heard a couple of other people back there—I don't know who it was—trying to get in.

Q. Why couldn't you see them?

A. Because I was standing at the end of the barge there.

Q. Were you keeping a look-out?

A. You could say that. I just didn't want to go down in there.

Q. Do you know who actually gained entry to the barge.

A. No, sir, I'm not sure.

Q. Kevin, did you know at the time that you were down there that you all were committing a crime?

A. Yes, I did know that, but—

The items stolen from the storage unit were tools, grease guns, grease and a battery charger. None of these items, or profits on their resale, were given to the accused. In both his statement and his trial testimony, the accused stated that he, standing at one end of the barge, with an obstructed view of the storage unit, was unaware of his friends' intent to steal the items until he heard the opening of the storage unit door. He then walked to the unit and saw his friends handling the goods. He then returned to the other end of the barge and went to an automobile, owned and operated by one of his friends, who remained in the storage facility. His friends returned to the automobile with the goods. The accused did not assist the others in placing the goods in the automobile. He was then immediately driven home.

The accused testified that he and his friends frequently trespassed upon the barge for fishing.

The jury convicted the accused of the offense "as charged in the indictment."

On appeal, the accused contends that the evidence is insufficient to support a conviction for entering with intent to commit larceny. Therefore, the trial judge erred when he denied the accused's motions for acquittal and new trial.

The standard for appellate review of the sufficiency of the evidence to support a conviction is contained in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate

---

**2.** The indictment reads:

That on or about the _____ day of April, 1985, in Wood County, West Virginia, KEVIN DWAYNE HOSELTON, committed the offense of 'entering without breaking' by unlawfully and feloniously entering without breaking a vessel owned by Dravo Corporation, more particularly described as a crane barge located in Wood County on the Little Kanawha River at a place commonly known as Merrill Landing, with intent to commit larceny therein, against the peace and dignity of the State.

**3.** The only other evidence offered by the State was testimony concerning the value of the property and the nature of the vessel. The barge is 100 feet in length and 35 feet in width. The accused stood, alone, at one end of the barge, while his friends entered the storage unit located on the other end of the barge. A 50-ton crane is approximately 25 feet from the storage unit.

and that consequent injustice has been done.

The State contends there was sufficient evidence to establish that the accused was a lookout, therefore, the conviction for breaking and entering as a principal in the first degree should stand.

A lookout is one who is "by prearrangement, keeping watch to avoid interception or detection or to provide warning during the perpetration of the crimes and thereby participating in the offenses charged ..." *People v. Small,* 55 A.D.2d 994, 995, 391 N.Y.S.2d 192, 194 (1977).

This Court has consistently held that lookouts are aiders and abettors, principals in the second degree. *State v. Audia,* 171 W.Va. 568, 576–577, 301 S.E.2d 199, 208 (1983), *cert. denied, Audia v. W.Va.,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); *State v. Perry,* 168 W.Va. 324, 326, 284 S.E.2d 861, 863 (1981); *State v. Riley,* 168 W.Va. 129, 135, 282 S.E.2d 623, 627 (1981); *State v. Petry,* 166 W.Va. 153, 154–5, 273 S.E.2d 346, 348 (1980); *State v. Crockett,* 164 W.Va. 435, 265 S.E.2d 268 (1979); *State v. Nicholson,* 162 W.Va. 750, 753–54, 252 S.E.2d 894, 896 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980); *State v. Grimmer,* 162 W.Va. 588, 592, 251 S.E.2d 780, 784 (1979), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980); *State v. Bennett,* 157 W.Va. 702, 705, 203 S.E.2d 699, 701 (1974), *overruled on other grounds, State*

*v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980) and *overruled on other grounds, State v. Ellis,* 161 W.Va. 40, 239 S.E.2d 670 (1977), *overruled State v. Adkins,* 162 W.Va. 815, 253 S.E.2d 146 (1979), *overruled State v. Lassiter,* 177 W.Va. 499, 354 S.E.2d 595 (1987); *State v. Martin,* 112 W.Va. 88, 163 S.E. 764 (1932); *State v. Powers,* 91 W.Va. 737, 113 S.E. 912, 916–17 (1922), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980).

Principals in the second degree are punishable · as principals in the first degree. *W.Va.Code,* 61–11–6 [1923].

An aider and abettor, or principal in the second degree must "in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek[s] by his action to make it succeed." *State v. Harper,* 179 W.Va. 24, 28, 365 S.E.2d 69, 73 (1987), *quoting* Learned Hand in *U.S. v. Peoni,* 100 F.2d 401, 402 (2nd Cir.1938).

It is well established that in order for a defendant to be convicted as an aider and abettor, and thus a principal in the second degree, the prosecution must demonstrate that he or she shared the criminal intent of the principal in the first degree. [citations omitted] Of course we also recognize that the defendant is not required to possess the identical intent as the principal in the first degree.

*State v. Harper,* 179 W.Va. 24, 29, 365 S.E.2d 69, 74 (1987).[4]

---

**4.** *See also* LaFave & Scott, *Substantive Criminal Law,* § 6 (1986), using the Model Penal Code definition of accomplices (principals in the second degree and accessories before the fact), Professor Scott writes:

> [i]t is useful to give separate consideration to whether a person has engaged in the requisite acts (or omissions) and to whether he had the requisite mental state.... It may generally be said that one is liable as an accomplice to the crime of another if he (a) gave assistance or encouragement or failed to perform a legal duty to prevent it (b) with the intent thereby to promote or facilitate commission of the crime. There is a split of authority as to whether some lesser mental state will suffice for accomplice liability, such as mere knowledge that one is aiding a crime or knowledge that one is aiding reckless or negligent conduct which may produce a criminal result.

> ... [Acts or omissions which establish accomplice liability must exhibit] sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intentions. An undisclosed intention to render aid if needed will not suffice, for it cannot encourage the principal in his commission of the crime. Quite clearly, mere presence at the scene of the crime is not enough, nor is mental approval of the actor's conduct. Also, in the absence of unique circumstances giving rise to a duty to do so, one does not become an accomplice by refusing to intervene in the commission of a crime. [§ 6.7(a) ]

> ... [A mental state must be evinced which establishes that] the accomplice intentionally encourages or assists, in the sense that his

■ Therefore, if the State establishes evidence that an accused acted as a lookout, it has necessarily established the requisite act and mental state to support a conviction of aiding and abetting. Circumstantial or testimonial evidence sufficient to allow an inference that one is acting as a lookout includes: accomplice testimony of pre-planning, *State v. Bennett, supra;* evidence of an identical crime committed in a similar manner in the same neighborhood where the alleged crime charged occurred, and accomplice testimony, *State v. Nicholson,* 162 W.Va. 750, 755–756, 252 S.E.2d 894, 897 (1979), *overruled on other grounds, Petry, supra;* uncontroverted circumstantial evidence of flight in an automobile with a Pennsylvania license plate, previously parked near the scene of a late evening breaking and entering, occupied by the accused and a driver, brother of the perpetrator (the automobile also contained the perpetrator's wallet), *State v. Tadder,* 173 W.Va. 187, 313 S.E.2d 667 (1984). However, as stated in syllabus point 3 of *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879 (1972):

'Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his noninterference was one of the conditions of the commission of the crime; or unless his noninterference was designed by him and operated as an encouragement to or protection of the perpetrator.' Syllabus, *State v. Patterson,* 109 W.Va. 588 [155 S.E. 661].

■ In this case, the only evidence that suggested the accused was a lookout was his response to the investigating officer's questioning: "Q. Were you a lookout? A. You could say that. I just didn't want to go down there."

In both his voluntary statement and during his testimony at trial, the accused stated that he had no prior knowledge of his friends' intentions to steal anything from the barge. When he heard the door open to the storage unit and saw his friends removing the goods, the accused left the barge and returned to the car. The accused never received any of the stolen property, which was later retrieved by the police from the other defendants.

A factual situation similar to that of the accused appears in *People v. Small,* 55 A.D.2d 994, 391 N.Y.S.2d 192 (1977). During cross-examination a witness was asked if he was a lookout. He responded, "I guess you could consider us lookouts." On appeal, the court held that the response at trial was insufficient evidence to conclude that the witness was an accomplice. In doing so, the court stated "there is no evidence that he was asked to be or directed to be a lookout and his testimony that he might be considered a lookout does not make him one." *Small,* 55 A.D.2d 994, 995, 391 N.Y.S.2d 192, 194.[5]

Similarly, the accused's response that "[y]ou could say" he was a lookout, standing completely alone, does not establish that the accused was an aider and abettor by participating in, and wishing to bring about the entering with intent to commit larceny.

Viewed in the light most favorable to the prosecution, the State did not prove that the accused was a lookout. Therefore, his conviction as a principal in the first degree is reversed as it failed to prove that the accused entered the vessel with shared intent to commit larceny.

purpose is to encourage or assist another in the commission of a crime as to which the accomplice has the requisite mental state.... liability without fault does not obtain in this area. [§ 6.7(b) ]

5. In *Small,* the witness was not the accused, but rather, a person who was in the accused's presence when the crime was committed. The witness was not charged for the crime. On appeal, Small argued that, based on the witness' testimony (which was the only evidence that linked Small to the crime), the witness was an accomplice as a matter of law, and therefore the witness' testimony required corroboration. The appellate court found the statement "clearly susceptible to differing interpretations and different inferences ..." *Small,* at 995, 194, 391 N.Y.S.2d 192.

We therefore reverse and set aside the accused's conviction for entering without breaking.[6]

Reversed.

---

6. Because of our ruling that the evidence was insufficient to support a conviction, we need not discuss the appellant's contention that local police officers were required to read the accused his *Miranda* rights for the third time prior to signing his voluntary statement which was taken in a non-custodial atmosphere, or his assignment of instructional error. Furthermore, as to the principles relating to a second trial, *see State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979).