382 S.E.2d 47

**STATE of West Virginia**

v.

**John TANNER.**

No. 18487.

Supreme Court of Appeals of West Virginia.

June 8, 1989.

W.A. Thornhill, III, Thornhill, Kennedy, & Vaughan, Beckley, for John Tanner.

John F. Parkulo, Asst. Pros. Atty., for Raleigh Co., Beckley, for state.

BROTHERTON, Chief Justice:

The appellant, John Tanner, was found guilty of transferring stolen property by a Raleigh County Circuit Court jury on January 20, 1988. Tanner appeals the denial of his motion to set aside the verdict and enter a judgment of acquittal and the April 27, 1988, order sentencing him to one-to-ten years in the State penitentiary. The sentence was suspended and Tanner was placed on probation. Tanner now asks that this Court overturn his conviction of transferring stolen property, or, in the alternative, that he be granted a new trial.

John Tanner was indicted in the Circuit Court of Raleigh County, West Virginia, on September 22, 1987, for one count of receiving stolen property and two counts of transferring stolen property in violation of W.Va.Code § 61–3–18.[1] All counts related to a stolen 1982 Dodge van.

John Tanner became involved with this van in late 1981 or early 1982, when a friend mentioned to him that he had talked with an unidentified man who was interested in swapping vans. The unidentified man later came to see Tanner in the office from which Tanner operated a security alarm system business and they discussed trading their vans. Tanner owned a 1975 Dodge van, and the van which the unidentified man wanted to trade (apparently the stolen 1982 Dodge van) was in better condition than Tanner's van, but Tanner states that it had body damage and high mileage. The parties agreed to a swap, and Tanner agreed to pay the man an additional $600.00 or $650.00 to make up for the difference in the condition of the vans, provided that the man would have the body damage repaired before they made the trade. The man came back several days later and took the older van belonging to Tanner, along with $300.00 or $350.00 that Tanner then gave him, and left his Dodge van with Tanner. Although the man was supposed to return to get the rest of the money, he never did so.

Tanner used the van until 1983, when his business failed. Tanner states "... I owed so much taxes to the Internal Revenue. I though they might take everything I had, so I just put it in Mr. McGuire's name ..." Because of his financial difficulties, he transferred the title to the 1975 van to his father-in-law, C.H. McGuire. However, the title he transferred to his father-in-law was actually the title to a van which was no longer in his possession. Apparently Tanner and the unidentified man did not properly transfer titles to the vehicles during their so-called "swap," and Tanner continued to use the title to the van he had swapped as if it were the title to the van he had received.[2] In December, 1984, Tanner gave the 1982 van to his son-in-law, Ronald Chapman, who operated a concrete business. Tanner states that the 1975 van title was then transferred from C.H. McGuire to Chapman.

In March of 1987, Ronald Chapman sold the 1982 van to his brother, Clarence Chapman, for $350.00, but before doing so he discussed the sale with his father-in-law, John Tanner. Chapman's brother never titled the van in his name and sold it seven or eight days later to Joseph Ames.

Joseph Ames first became suspicious of the van when he discovered that there was no serial number on it and that underneath the hood, where the van had not been painted, there was a sticker with the year 1982 on it. Ames immediately contacted the police, and the subsequent investigation revealed that the van Ames had purchased was in fact a 1982 Dodge van which was stolen on November 5 or 6, 1981, from Carol Hager Motors, where it was in the process of having minor damages repaired. The State's evidence also disclosed that the van purchased by Joseph Ames, which he believed to be a 1975 Dodge van, actually had 1982 emission control stickers under the hood and the vehicle identification number (V.I.N.) located on the driver's side of the dashboard, had been removed. However, a serial number which matched the number on the title to the stolen 1982 Dodge van was located underneath Ames' van, on the passenger side of the vehicle.

1. West Virginia Code § 61–3–18 (1989) provides that:
   If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted.

2. We note that Tanner was not charged with any crime in connection with this activity and that the jury was instructed "that if it is a crime to transfer a motor vehicle certificate of title, known by the transferor to belong to a separate vehicle, such a crime is not charged against the Defendant, John Tanner, in the present case."

At trial, the judge dismissed the second count of the indictment against Tanner, which pertained to Tanner's alleged transfer of stolen property to C.H. McGuire, after the evidence demonstrated that no actual physical transfer had taken place. The jury acquitted Tanner of receiving stolen property in late 1981 or early 1982, the charge contained in the first count of the State's indictment. However, the jury found Tanner guilty of transferring stolen property to Ronald Chapman on December 5, 1984, and convicted him on the third count of the State's indictment.

Among his assignments of error, Tanner now argues that the trial court erred in refusing to direct a verdict of acquittal and refusing to set aside the finding of guilty on the third count of the indictment, transfer of stolen property, when no evidence was presented which indicated that Tanner had a "dishonest purpose" in making this transfer. We agree that the State failed to present evidence which would tend to show that Tanner had a "dishonest purpose" when he made the transfer to his son-in-law, and we reverse his conviction for this reason.

■ In *State v. Taylor*, 176 W.Va. 671, 346 S.E.2d 822 (1986), this Court stated that despite some commonality in the elements, W.Va.Code § 61–3–18 contains a series of separate and distinct offenses which relate to stolen property. *Id.* 176 W.Va. at 676, 346 S.E.2d at 826–27. In *Taylor*, we applied the statute to a case involving the transfer of stolen goods for the first time, and stated that:

> The elements of transferring stolen property are: (1) the property must have been stolen by someone other than the accused; (2) the accused must have transferred the property knowing or having reason to believe that the property was stolen; (3) the property must have been transferred to someone other than the owner; and (4) the accused must have transferred the property with a dishonest purpose.

*Id.* 176 W.Va. at 676, 346 S.E.2d at 827. We also noted that although § 61–3–18 does not contain a scienter or criminal intent requirement, in syllabus point 4 of *State v. Basham*, 159 W.Va. 404, 223 S.E.2d 53 (1976), the Code provision was construed as containing a *mens rea* element:

> In a prosecution under Code, 61–3–18, for buying or receiving stolen goods, a jury must find beyond a reasonable doubt that the accused acted with a "dishonest purpose" before it can find him guilty of the offense, and the accused is entitled to have the jury properly instructed on the question of his intent.

*Taylor*, 176 W.Va. at 674, n. 5, 346 S.E.2d at 824, n. 5.

■ At Tanner's trial, the jury was instructed as to the essential elements of the crime of transferring stolen property, including the intent element, or "dishonest purpose," in the following manner:

> The Court further instructs the jury that before you can find the Defendant, John Tanner, guilty of any crime, you must find from the evidence, and beyond a reasonable doubt, that he received or transferred the stolen 1982 Dodge van with a dishonest purpose. You are further instructed that a dishonest purpose would be one of a deceitful, cheating or fraudulent nature.

However, a careful examination of the record in this case reveals only three instances in which Tanner's transfer of the van to his son-in-law, for which he was convicted of transferring stolen property, was even discussed.

Tanner first discussed giving the van to his son-in-law when he went to the State Police office for the purpose of giving a statement on May 7, 1987.[3] After discussing why he had put title to the van in the name of his father-in-law, C.H. McGuire, Tanner continued:

> ... then later, Ronnie, my son-in-law, he needed it to get to work in. And I tell you the truth, I don't know if it went to McGuire, to Ronnie, or from me to Ronnie or what. It would be easy to check,

---

3. Tanner's written but unsigned statement was admitted into evidence at trial as State's Exhibit 1 and was read by Prosecuting Attorney Lazen- by and the officer who took the statement, Corporal McGraw.

but I think from McGuire to Ronnie. I didn't get anything for it. I just gave it to Ronnie because I had no need for it and he did.

Tanner also briefly discussed giving the van to his son-in-law in his grand jury testimony, which was later read to the jury at his trial:

... then I don't recall if we put it back in my name and I gave it to my son-in-law later, or whether we just put it in my father-in-law's to my son-in-law's name. But either way, there was no money transpired, because it was all family.

At any rate, what happened to the van was, I gave it to Ronnie, my son-in-law, who's in the construction business. And I had no need for the van and he did, so I gave him—he had no money, so I gave him the van, which he drove it for, I don't know, two years, three years, whatever.

Finally, Ron Chapman testified at trial as to how he received the van:

Q. Would you explain to the court, then exactly what happened in terms of this 1975 Dodge van [which was actually the 1982 stolen Dodge van], as far as you are concerned, Mr. Chapman?

A. Well, he just come up to me one day and asked me if I'd like to have that van for a work van. And I told him, yes, and that's how I become of it.

In its closing, the prosecution argued that by the time Tanner transferred the van to Chapman on December 5, 1984, he knew the van was stolen and thus Tanner had a dishonest purpose in that he continued to conceal something he knew about and, in the process, he deprived the real owner of his vehicle. Tanner's attorney objected to the prosecution's references to elements of the offense of concealment because Tanner was not charged in the indictment with concealing stolen property. The prosecution responded that the State was "not arguing that he was guilty of that," but that "that is the dishonest purpose as was given by the instruction of the Court." This response leads us to conclude that the State did not wish to charge Tanner with the separate offense of concealing stolen

property, and thus have to prove the elements of this crime, but they did want the jury to infer that such concealment could warrant a finding of a dishonest purpose in Tanner's transfer of the van to his son-in-law. However, the trial judge overruled the defendant's objection on this point, stating, "Well, we'll let the jury consider the whole facts as presented to them. And rely upon their good judgment." We do not believe the prosecution should have been permitted to confuse the issues before the jury in this manner.

We would point out that, contrary to the underlying premise of the prosecution's argument, "the element of dishonest purpose is distinct from the element of knowledge." *State v. Barker,* 176 W.Va. 553, 346 S.E.2d 344, 349 (1986). To "aid in concealing" stolen property is a separate stolen property offense delineated in W.Va.Code § 61–3–18, while the existence of a "dishonest purpose" is considered an essential element of all of the stolen property offenses contained therein. In *Taylor,* we recognized "that there is a sufficient disparity between the crime of transferring stolen property from that of receiving or aiding in the concealing of stolen property to warrant the conclusion that it is a separate offense." 176 W.Va. at 675, 346 S.E.2d at 826.

This Court has previously held that "to sustain a conviction the State must prove every essential element of the crime charged beyond a reasonable doubt." *State v. Breeden,* 174 W.Va. 705, 329 S.E.2d 71 (1985) (citations omitted). In order to properly convict Tanner of transferring stolen property, the prosecution had the burden of proving the four essential elements of the crime beyond a reasonable doubt, including a "dishonest purpose" when he transferred the van to his son-in-law. The prosecution did not establish what Tanner's dishonest purpose may have been when he gave his son-in-law the van. We recognize that if not for Tanner and Chapman's own brief statements regarding the transfer, there would have been virtually no evidence in the record indicating that this transfer even occurred. In fact, had Tanner not volunteered the information as

to how this van first came to be in his possession, it seems unlikely that any case at all would have ever been made against him.

We conclude that Tanner was not properly found guilty of the crime for which he now stands convicted. Because we reverse Tanner's conviction on the ground that the State did not prove that Tanner transferred the van to his son-in-law with a dishonest purpose, we find that it is unnecessary to address the remaining assignment of error made by the appellant. When intent is an essential element of an offense that is charged, retrial is barred by double jeopardy. "The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Syllabus Point 4, *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979). We, therefore, order that this conviction be set aside and remand this case to the circuit court below for the purpose of entering a judgment of acquittal.

Reversed and remanded.