443 S.E.2d 236

STATE of West Virginia, Plaintiff Below, Appellee,

v.

William Ulysses MAYO, Jr., Defendant Below, Appellant.

No. 21760.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1994.

Decided March 25, 1994.

Thomas W. Smith, Smith & Curnutte, Charleston, for appellant.

MILLER, Justice:

This appeal is brought by the appellant and defendant below, William Ulysses Mayo, Jr., from his conviction in the Circuit Court of Fayette County, of second degree murder, attempted second degree murder, and unlawful wounding. The defendant contends that there was insufficient evidence to support his convictions as an aider and abettor to second degree murder and unlawful wounding. He also alleges that the jury instruction unconstitutionally relieved the State of proving an essential element of attempted murder. We agree and reverse the judgment of the circuit court.

## I.

The evidence shows that on July 6, 1991, Brian Berry went to W.D. Tire Sales in Mount Hope, West Virginia, to get the oil checked in his motorcycle. Mr. Berry was a regular customer of the store. He knew Jesse Rhodes, the owner of the store, and Dickie Rhodes, Jesse's father who helped with the business. While at the store, Mr. Berry and Dickie Rhodes had a heated argument over an overdue bill. Mr. Berry told Dickie Rhodes that he would go to his apartment and come back with the money.

Mr. Berry went to the Stadium Terrace apartments. He told his stepfather, Robert Kirkland, that Dickie Rhodes "jumped" him over a $103 bill. The two men decided to go see what they could work out. Mr. Berry went to the defendant's apartment and yelled for him to join them. Mr. Berry told the defendant to get his gun. The defendant retrieved his gun and joined them.

Meanwhile, Jesse Rhodes had left the store and was driving by the apartment. He saw the men get into Mr. Kirkland's car. Concerned about the previous argument, he drove back to the store to warn his father that he saw someone climb into the car with a gun.

When they arrived at the store, Mr. Berry, Mr. Kirkland, and the defendant got out of the car. Dickie Rhodes came out with a

Stephen R. VanCamp, Asst. Atty. Gen., Charleston, for appellee.

82

baseball bat and told them to get back into the car. The defendant climbed in the back seat, and Mr. Berry sat in the front passenger's seat of the car. Mr. Kirkland went into the office to speak to Dickie Rhodes about the bill. Witnesses testified that Mr. Kirkland acted as a peacemaker. Mr. Kirkland assured Dickie Rhodes that the bill would be paid, and the conflict was resolved.

Mr. Kirkland went back to his car. Dickie Rhodes followed him out into the parking lot. Mr. Berry yelled from the passenger's side of the car "I ain't going to pay you, you white son of a bitch." Dickie Rhodes reached inside the car and hit Mr. Berry. Mr. Kirkland started to back the car up as the two men exchanged blows. Mr. Berry pulled out a pistol and shot Dickie Rhodes in the chest. The bullet went through Dickie Rhodes, fatally injuring him, and lodged in Jesse Rhodes' leg. Mr. Kirkland drove the car from the scene.

Jesse Rhodes chased the Kirkland car in his pickup truck. During this high speed chase, he rammed the car several times. He testified that he did this to prevent the men from escaping. Four or five shots were fired at Jesse Rhodes from the Kirkland car. One bullet was later recovered from the truck's radiator.

Jesse Rhodes pushed the car into a guard rail at the Mount Hope Bypass. The defendant, Mr. Berry, and Mr. Kirkland ran from the car. Jesse Rhodes drove back to the tire store. All the occupants of the Kirkland car turned themselves in to the authorities the following day. The defendant was charged with aiding and abetting the murder of Dickie Rhodes and the unlawful wounding and attempted murder of Jesse Rhodes.

On November 27, 1991, the jury found the defendant guilty of second degree murder, attempted second degree murder, and unlawful wounding. The circuit court denied the defendant's motion for a new trial. This appeal ensued.

II.

The defendant first contends that the State failed to present any evidence that he aided and abetted Mr. Berry in firing the shot that killed Dickie Rhodes and wounded Jesse Rhodes. The defendant asserts that the State only put forth evidence that he was present in the car when the shooting took place.

In *State v. Fortner*, 182 W.Va. 345, 355, 387 S.E.2d 812, 822 (1989), we discussed the basic distinction between a principal in the second degree, who is often called an aider and abettor, and an accessory before the fact: "Thus, the chief difference between a principal in the second degree and an accessory before the fact is that the former is actually or constructively present at the time and place of the commission of the offense, while the latter is absent." (Citations omitted).

We went on in *Fortner* to outline the type of activities that could make one an aider and abettor:

"To be convicted as an aider and abettor, the law requires that the accused 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed.' *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), *quoted with approval in Nye & Nissen v. United States*, 336 U.S. 613, 619 69 S.Ct. 766, 770, 93 L.Ed. 919, 925 (1949), and *State v. Harper*, 179 W.Va. 24, 28, 365 S.E.2d 69, 73 (1987). The State must demonstrate that the defendant 'shared the criminal intent of the principal in the first degree.' *State v. Harper*, 179 W.Va. at 29, 365 S.E.2d at 74. (Citations omitted). In this regard, the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor. *State v. Harper, supra; State v. West*, 153 W.Va. 325, 168 S.E.2d 716 (1969)." 182 W.Va. at 356, 387 S.E.2d at 823.

Finally, in *Fortner*, we recognized that "mere presence at the scene of the crime, even with knowledge of the criminal purpose of the principal in the first degree, is not, alone, sufficient to make the accused guilty as a principal in the second degree[.]" 182 W.Va. at 356, 387 S.E.2d at 823. We concluded in Syllabus Point 9 of *Fortner*:

" ' "Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator." Syllabus, *State v. Patterson,* 109 W.Va. 588, [155 S.E. 661] [(1930)].' Syllabus Point 3, *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879 (1972)."

█ With these legal principles in mind, we test the sufficiency of the evidence to support a criminal conviction by our traditional rule set out in Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

█ Viewing the evidence in the light most favorable to the prosecution, we find that the State did not prove beyond a reasonable doubt that the defendant acted as an aider and abettor to second degree murder and unlawful wounding. First, there appears to have been no common design to commit a criminal offense. Mr. Berry and Mr. Kirkland were regular customers of W.D. Tire Sales. They went to the store in an effort to resolve the dispute in regard to the overdue bill. No criminal venture or plan to commit a crime was formulated before they arrived at the store. Although Mr. Berry carried a gun, as did the defendant, neither of them were allowed to stay outside the car.

Mr. Kirkland was Mr. Berry's stepfather. His discussion with Dickie Rhodes was centered on payment of the bill. This discussion took place inside the store. Witnesses indicated the matter was amicably resolved and Mr. Kirkland returned to and entered his car.

Although there is some disagreement as to whether the Kirkland car had actually started to back out of the store lot, there is nothing to suggest any criminal conduct up to this point. It was not until Mr. Berry, who was seated on the passenger side of the car, shouted a curse in defiance to Dickie Rhodes that the latter moved to the car and struck Mr. Berry, who then shot Dickie Rhodes.

These unlawful acts on the part of Mr. Berry cannot be attributed to the defendant. Up until the moment they occurred, the matter had been peacefully handled by Mr. Kirkland. Everyone was inside the car, and the car was beginning its return journey. There was no evidence to suggest that the killing of Dickie Rhodes and the subsequent wounding of his son were part of any concerted plan.

This matter bears some resemblance to *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879 (1972), where the defendant was convicted of aiding and abetting an armed robbery. The evidence showed that the defendant and his companion, a Mr. Lafollette, were traveling on an icy rural road. They encountered another vehicle being driven by a Mr. Greer. The two vehicles stopped because the road was narrow. Mr. Lafollette got out of his vehicle and pushed on the Greer car. According to Mr. Greer, there was sufficient room for the other car to pass. However, Mr. Lafollette demanded money and struck Mr. Greer, whereupon the defendant intervened and got Mr. Lafollette back into his car. A few minutes later, Mr. Lafollette got out of the car and came over to Mr. Greer again demanding money. Eventually, Mr. Greer gave Mr. Lafollette money when Mr. Lafollette struck Mr. Greer while searching for his wallet. The defendant again told Mr. Lafollette to get into the car, which he did. We concluded that there was insufficient evidence to convict the defendant, stating: "[N]or is there any evidence that he consented, abetted or encouraged by act or word the commission of the crime. Mere presence is not enough without some form of partic-

ipation." 156 W.Va. at 289, 192 S.E.2d at 884. (Citations omitted).

We dealt with an aider and abettor to larceny from a barge in *State v. Hoselton*, 179 W.Va. 645, 371 S.E.2d 366 (1988). The defendant in *Hoselton* had gone onto the barge with some friends. The friends proceeded to the other end of the barge and broke into a storage unit. The defendant could see what they were doing, went to the unit, and saw them remove certain pieces of equipment. He left them and proceeded off the barge. The defendant got into the automobile that had been driven to the barge. His friends returned with the equipment, but he did not keep any of it. When asked at trial if he was a "look-out," the defendant replied, "You could say that. I just didn't want to go down in there." 179 W.Va. at 647, 371 S.E.2d at 368. He also testified that he had no prior knowledge of his friends' intentions to steal anything. We found the evidence to be insufficient to warrant a conviction for aiding and abetting.

This case bears some similarity to *Brown v. State*, 250 Ga. 862, 302 S.E.2d 347 (1983), where two brothers attended a party at a cabin. An argument ensued and they were both beaten up and left the party. Shortly thereafter, they discovered they had left a pair of expensive boots behind. Fearful of a renewal of the fighting, they took a shotgun with them. As they entered the area where the cabin was located, they encountered a vehicle coming from the direction of the cabin. They stopped the vehicle by pointing the shotgun at it and asked the driver, Wayne McGee, to tell them who was left at the cabin. They then let the car proceed.

When the brothers arrived at the cabin, an argument ensued with some of the people who came out of the cabin. The defendant's older brother started out of the car with the shotgun. He claimed that he felt threatened by an individual who was coming toward him in the dark and shot causing the victim's death.

The older brother was convicted of murder, as was the younger brother on the basis that he was an aider and abettor. On appeal, the Georgia Supreme Court reversed the convictions, giving this rather cryptic summary of its law: "Presence at the scene of a crime is not sufficient to show that a defendant is a party to the crime.... Even approval of the act, not amounting to encouragement, will not suffice." 250 Ga. at 864, 302 S.E.2d at 349. (Citations omitted). It then proceeded to give this factual analysis of the defendant's activity:

"The mere fact that he participated in the act of bringing the shotgun and shells along or that he may have pointed the shotgun at Wayne McGee on the road does not constructively supply any intent to shoot Michael Thigpen. There is no direct evidence of his participation and no circumstantial evidence aside from his presence." 250 Ga. at 864, 302 S.E.2d at 349.

Another related case is *People v. Taylor*, 244 Ill.App.3d 152, 184 Ill.Dec. 878, 614 N.E.2d 79 (1993), where the defendant was convicted of first degree murder on an aider and abettor accountability theory. Three of the defendant's friends came to his home and picked him up in their car. One of the men told the defendant that he was searching for and wanted to kill the victim because the victim had been in a fight with the man's younger brother. They drove around and found the victim. The man who had been looking for the victim got out of the car and shot him. They fled from the scene, but then drove back and fired a shot in the air. When the police arrived, the four men fled. The trial court found the jury's verdict of murder was correct because the defendant got into the car knowing that one of the men in the car was seeking the victim to murder him. The appeals court reversed the conviction due to insufficiency of the evidence, stating:

"In this case, the evidence provided by the State proved that defendant did nothing more than ride in a vehicle in which the shooter was present. While defendant gave conflicting testimony regarding his knowledge of why Kendricks drove to the scene of the shooting, and whether Kendricks had a gun, it is clear that defendant did not participate in any act which attributed to the shooter's objective of murdering Otha Smith. The record is clear that defendant did not have a weapon, did not participate in planning or executing any

plan to murder Smith or provide instruments in furtherance of that plan." 244 Ill.App.3d at 158, 184 Ill.Dec. at 882, 614 N.E.2d at 83.

The prosecutor's case in *Taylor* was stronger than in this case because Kendricks, the shooter, disclosed his plan to kill the victim to the defendant after he got into the car. However, there was insufficient evidence to link the defendant to the plan. Here, however, there was no evidence that Mr. Berry planned in advance to kill the victim or that the defendant assisted or encouraged Mr. Berry. Indeed, until the moment that Mr. Berry cursed Dickie Rhodes and then shot him, the event could not have been anticipated. There was no prior unlawful activity on the part of anyone before the event. Accordingly, there was no evidence that the defendant "knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Fortner*, 182 W.Va. at 356, 387 S.E.2d at 823.

■ For the foregoing reasons, we hold that the evidence was insufficient to sustain the defendant's conviction of second degree murder and unlawful wounding. Where there is such evidentiary insufficiency to support a criminal conviction, then under constitutional double jeopardy principles, the State is foreclosed from retrying the defendant. This double jeopardy bar was announced in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and we adopted it in Syllabus Point 4 of *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979):

> "The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."

*See also State v. Tanner*, 181 W.Va. 210, 382 S.E.2d 47 (1989); *State v. Breeden*, 174 W.Va. 705, 329 S.E.2d 71 (1985); Syllabus Point 3, *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979).

As a result of this evidentiary insufficiency, the State is foreclosed from retrying the defendant on the charge of aiding and abetting the homicide of Dickie Rhodes and the unlawful wounding of Jesse Rhodes.

## III.

The principle error assigned on the attempted second degree murder conviction is the giving of State's Instruction No. 4 on the ground that it unconstitutionally relieved the State of proving an essential element of attempted murder. That instruction reads:

> "The jury is further instructed that a person cannot be guilty of an attempt to commit murder unless he has a specific intent to kill. But if an accused wounds a person by deliberate use of an instrument likely to produce death under the circumstances, the presumption of the law is that he intended the consequences that resulted from the use of the deadly instrument. A man is presumed to have intended the immediate direct and necessary consequences of his voluntary act."

The record reflects that the trial judge inquired about the "presumption" and specifically states that the instruction was pointed out to the defendant and he had no objection.

The State argues that the defendant waived any right to raise this issue on appeal. Furthermore, because the presumption concerning a wounding had no basis in the facts surrounding the attempted murder of Jesse Rhodes on the Mount Hope Bypass, it could not have misled the jury. We fail to understand this latter position since the evidence pointing to the attempted murder of Jesse Rhodes was that as he chased the Kirkland car four or five shots were fired from it. One bullet was found lodged in the radiator of Mr. Rhodes' vehicle.

■ We dealt with a conviction for attempted second degree murder in *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). There, the defendant shot at the victim, a Blakely Sower, as he was driving away in his pickup truck after arguing with the defendant. The pellets from the defendant's shotgun struck the truck, but did not injure Mr. Sower. We said: "In the present case there was sufficient evidence from which the jury could have found beyond a reasonable doubt that the defendant's act of firing at Blakely Sower was done with the requisite criminal intent to sustain a conviction of sec-

ond degree murder." 161 W.Va. at 525, 244 S.E.2d at 224. We went on in Syllabus Point 2 of *Starkey* to define the elements of the crime of attempt:

"In order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime."

We concluded that the firing of the shotgun at Mr. Sower was a sufficiently overt act to justify the conviction of attempted second degree murder, stating: "Here, from the circumstances surrounding the firing of the shotgun, there is nothing to suggest that serious bodily harm or death was not intended." 161 W.Va. at 525, 244 S.E.2d at 224.

In *Starkey*, the State used an instruction to advise the jury that "malice and intent can be inferred ... from the defendant's use of a deadly weapon[.]"[1] The purpose of the instruction was to advise the jury as to how criminal intent could be determined. We found the instruction not to be unconstitutional because the use of the word "inferred" rather than "presumed" did not make it a burden-shifting instruction.

This same type of approach was used by the State in this case in its Instruction No. 4, which was designed to inform the jury on proof of criminal intent through the use of a deadly weapon. As we have noted, intent is an element of the offense of attempt to commit a crime under *State v. Starkey, supra.*

■ However, the language of the instruction that "[a] man is presumed to have intended the immediate direct and necessary consequences of his voluntary act" has been condemned as being an unconstitutional burden-shifting instruction in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We adopted this rule in *State v. O'Connell*, 163 W.Va. 366, 366–67, 256 S.E.2d 429, 430 (1979), where the State's instruction stated, in part, "that a man is

presumed to intend that which he does, or which is the immediate and necessary consequences of his act." In both cases, the instruction was deemed to relieve the State of the burden of proving the defendant's criminal intent. We stated in the Syllabus of *O'Connell:*

"In a criminal prosecution, it is constitutional error to give an instruction which supplies by presumption any material element of the crime charged."

*See also* Syllabus Point 1, *State v. Keffer*, 168 W.Va. 59, 281 S.E.2d 495 (1981); *State v. Haddox*, 166 W.Va. 630, 276 S.E.2d 788 (1981).

■ We have recognized in the past that in certain circumstances under the doctrine of plain error, we will consider trial error that has not been objected to where it conforms to the conditions set out in Syllabus Point 4 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988):

"The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

*See also* Syllabus Point 6, *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990).

In this case, we find the instructional error to meet the foregoing test. The evidence pointing to the defendant's guilt was, at best, meager. There was no testimony that he fired the gun at Mr. Rhodes during the motor vehicle chase. The bullet identified in the Rhodes' vehicle belonged to Mr. Berry and not the defendant. The instruction was critical to the State's ability to show specific intent to kill.

---

1. The full text of the State's instruction is contained in note 9 of *Starkey,* which states: " 'The Court instructs the jury that malice and intent can be inferred by the jury from the defendant's

use of a deadly weapon, under circumstances which you do not believe afforded the defendant excuse, justification or provocation for his conduct.' " 161 W.Va. at 528, 244 S.E.2d at 226.

Much the same analysis precludes the error from being harmless constitutional error under our traditional harmless error test stated in Syllabus Point 5 of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977):

" 'Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syllabus point 5, *State ex rel. Grob v. Blair,* [158] W.Va. [647], 214 S.E.2d 330 (1975)." [2]

*See also* Syllabus Point 2, *State v. Gibson,* 186 W.Va. 465, 413 S.E.2d 120 (1991); Syllabus Point 7, *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988).

For the foregoing reasons, the judgment of the Circuit Court of Fayette County is reversed, and this case is remanded for further proceedings consistent with this opinion.[3]

Reversed and remanded.

**2.** This test was patterned after the United States Supreme Court's standard contained in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**3.** In view of the jeopardy bar as to the defendant's conviction for second degree murder and malicious wounding and the reversal of the attempted murder conviction, we decline to address the other assignments of error.