656 S.E.2d 74

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**Eric Allen FOSTER, Defendant Below, Appellant.**

**No. 33323.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2007.

Decided Nov. 19, 2007.

Darrell V. McGraw, Jr., Esq., Attorney General, Thomas W. Smith, Esq., Managing Deputy Attorney General, Charleston, WV, for the State.

Margaret L. Workman, Esq., Charleston, WV, for Eric Allen Foster.

**634**

PER CURIAM.

The defendant below and appellant herein, Eric Allen Foster, appeals his convictions of two counts of second degree murder and his two consecutive forty-year sentences. For the reasons discussed below, we affirm.

## I.

### FACTS

Evidence adduced at trial indicated that on December 30, 2003, Eric Allen Foster, the appellant, was at the home of his friend, Matt Bush. That afternoon, Travis Painter came to Bush's home to see the appellant. There had previously been animosity between the appellant and Painter. On the day at issue, an argument ensued, and Painter pulled a gun on the appellant. The appellant disarmed Painter without further incident at that time. There was testimony that at the conclusion of the confrontation, Painter told the appellant that the conflict between them was "ridiculous" or "stupid," and he invited the appellant to come to the residence of his brother-in-law, Mike Murphy, that evening to talk things out and resolve their differences.

That evening, the appellant drove his truck to the Murphy residence accompanied by Bush and Jeff Stewart, a friend of Bush's, who was in possession of a shotgun. When the appellant pulled his truck up to the Murphy residence, both Murphy and Painter approached the truck. Murphy was armed with a rifle and Painter with a nine-millimeter pistol. At that point, gunfire erupted. There was eyewitness testimony suggesting that the first shots came from the appellant's truck. Murphy died of a single shotgun wound to the chest and Painter died of a 22-caliber bullet to the brain.

After the appellant, Bush, and Stewart left the Murphy residence, the appellant returned to Bush's house where he picked up his girlfriend and washed his finger which was bleeding from a gunshot wound. He then went home where he called the police to report that his truck had been shot numerous times. At trial, the appellant testified that he did not know at that time that Murphy and Painter had been killed. Also after the shootings, two witnesses who had been in the Murphy residence at the time of the shootings arrived at Matt Bush's house to call the police, unaware of Bush's involvement in the shootings. Bush and Stewart held the witnesses hostage for a short time and threatened them to not report the shootings to the police.

The appellant, Bush, and Stewart were each charged in a seven-count indictment with two counts of murder in the first degree, two counts of malicious assault, and three counts of wanton endangerment with a firearm.[1] The defendants were tried separately.

At the appellant's trial, the State proceeded only on the two murder counts. The State presented circumstantial evidence that the appellant acted in concert with the shooter or shooters. Bush and Stewart were called as witnesses at the appellant's trial, but both exercised their Fifth Amendment rights and refused to testify. The appellant testified that he knew that Stewart had the shotgun with him when they traveled to Murphy's residence but that Stewart had indicated that he intended to pawn the shotgun to Mike Murphy. He also testified that he was unaware of the presence of a 22-caliber pistol in the truck. According to the appellant, he had no knowledge that a gunfight was going to occur and he did not intend for it to occur. In addition, the appellant testified that Stewart reached across him and shot Murphy from the driver's side window, and that the appellant did not anticipate this act. Finally, the appellant stated that he does not know who fired the 22-caliber gun because he ducked onto the floor of the truck to escape gunfire.

The appellant was convicted of two counts of second degree murder and sentenced to two consecutive forty-year terms. On appeal, the appellant raises several assignments of error.

---

1. The third wanton endangerment count alleged the victim to be Jeremy Hanna who was in Murphy's residence at the time of the shootings. There was evidence that Hanna ran from the residence, fired a weapon at the appellant's truck, and that the shooter(s) in the appellant's truck returned gunfire.

## II.

## DISCUSSION

### A. Sufficiency of the Evidence

The appellant's first assigned error is that there was insufficient evidence to support the guilty verdict. According to the appellant, there was no evidence below that he possessed or fired a weapon. Also, there was no evidence that he participated in planning a crime in concert with Bush and Stewart, or that he in any way encouraged, incited, assisted, or facilitated the killing of Murphy and Painter. Moreover, the appellant claims there was no evidence that he possessed the requisite intent and malice to be found guilty of second degree murder.

In analyzing this issue, we are mindful that:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus Point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Moreover,

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *Guthrie*.

This Court has also indicated that when reviewing the sufficiency of the evidence, we must consider the distinctions between the parties to a crime. In Syllabus Point 8 of *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989), we held:

Where a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense.

Under the "acting in concert with" or "concerted action" theory of culpability, it was not necessary for the State to prove that the appellant was the absolute perpetrator of the crime, but rather that he was present at the commission of the crime and that he aided and abetted it; in other words, that he was a principal in the second degree to the commission of the crime. As this Court held in Syllabus Point 5 of *State v. Fortner*, "[a] person who is the absolute perpetrator of a crime is a principal in the first degree, and a person who is present, aiding and abetting the fact to be done, is a principal in the second degree."

In *Fortner*, this Court discussed at length what the conviction of a defendant as principal in the second degree requires.

To be convicted as an aider and abettor, the law requires that the accused in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. The State must demonstrate that the defendant shared the criminal intent of the principal in the first degree. In this regard, the accused is not required to have intended

the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor.

*Fortner,* 182 W.Va. at 356, 387 S.E.2d at 823(internal quotation marks and citations omitted). We have further held that,

> Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.

Syllabus, *State v. Patterson,* 109 W.Va. 588, 155 S.E. 661 (1930). ▮ However,

> Proof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime.

Syllabus Point 10, *Fortner.* Finally, "[u]nder the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator." Syllabus Point 11, *Fortner.*

▮ The appellant does not dispute that he was present with the perpetrator or perpetrators who actually fired the shots that killed Murphy and Painter. He maintains, however, that the evidence is insufficient to show that he acted in concert with the perpetrator(s) so as to be criminally liable for the victims' murders. Essentially, posits the appellant, the State's evidence is sufficient to prove only that he was a witness to the murders—someone who was in the wrong place at the wrong time.

This Court has said that proof that the appellant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt. Again, it is undisputed that the appellant was

present when Murphy and Painter were shot to death. Additional evidence of guilt is the fact that the appellant drove his own vehicle to the Murphy residence the night of the shootings, and he permitted Matt Bush and Jeff Stewart to travel with him to the residence with the knowledge that Jeff Stewart had a shotgun in his possession.

We have also said that in determining guilt, the jury may consider the defendant's relation to the perpetrator. The evidence in this regard indicates that the appellant was a good friend of co-defendant Matt Bush. Another factor that the jury may consider is the defendant's conduct before the commission of the crime. The State introduced evidence that on the day of the killings, the appellant and one of the victims, Travis Painter, had a physical confrontation. In addition, the State produced testimony that the appellant's girlfriend was "upset" that the appellant intended to travel to Murphy's residence, that she was in tears when she begged the appellant not to go, and that "she just wanted things to be calm."

In support of his argument that there was insufficient evidence to convict him of second degree murder, the appellant cites several cases in which this Court found insufficient evidence to convict defendants as aiders and abettors. Two of these cases are *State v. Kirkland,* 191 W.Va. 586, 447 S.E.2d 278 (1994) and *State v. Mayo,* 191 W.Va. 79, 443 S.E.2d 236 (1994), both of which arose from the same set of facts as follows. Brian Berry had a heated conversation and physical altercation with the victim, Dickie Rhodes, the owner of a tire store, regarding the payment of a past due bill. Mr. Berry then went to his apartment and retrieved his stepfather, Robert Kirkland, the appellant in *State v. Kirkland,* and his neighbor, William Mayo, the appellant in *State v. Mayo,* to return to the tire store with him. Mr. Berry asked Mr. Mayo to bring a gun with him, apparently without the knowledge of Mr. Kirkland. Upon arriving at the tire store, Mr. Kirkland went inside to discuss the matter with Mr. Rhodes, and Mr. Berry and Mr. Mayo remained in the car. Mr. Kirkland and Mr. Rhodes appeared to have reached an under-

standing that the bill would be paid, and Mr. Kirkland returned to the car.

> Dickie Rhodes followed [Mr. Kirkland] out into the parking lot.... Mr. Berry who was in the passenger seat of [Mr. Kirkland's] car and Dickie Rhodes got into an argument. Jesse Rhodes [Dickie Rhodes' son] testified that Mr. Berry yelled at his father: "I ain't going to pay you, you white son of a bitch." Dickie Rhodes proceeded to the car door, while [Mr. Kirkland] was slowly backing out of the parking lot. Jesse Rhodes testified that his father reached inside the passenger window and hit Mr. Berry. Jesse Rhodes went to get his father, when Mr. Berry pulled out a 9mm pistol and shot Dickie Rhodes in the chest, fatally wounding him. The bullet went through Dickie Rhodes and lodged in Jesse Rhodes' leg. [Mr. Kirkland] immediately drove the threesome away from the crime scene.

*Kirkland,* 191 W.Va. at 590–591, 447 S.E.2d at 282–283 (footnote omitted).

This Court found insufficient evidence to prove Mr. Kirkland guilty of aiding and abetting the murder of Dickie Rhodes and for attempted murder and malicious wounding of Jesse Rhodes, explaining that

> First, there was no evidence which indicated that the Appellant willingly participated in the criminal venture with the perpetrator, Mr. Berry.... There was absolutely no evidence that the Appellant went to the tire store with the other two men after devising a plan to get revenge with Dickie Rhodes. While Mr. Mayo retrieved a gun prior to accompanying the Appellant and Mr. Berry to the tire store, there was no evidence that the Appellant knew that Mr. Mayo possessed the weapon or that Mr. Berry requested that Mr. Mayo bring his weapon. Likewise, there was no evidence, other than the Appellant's knowledge that a 9mm pistol was in the glove compartment, that the Appellant knew that Mr. Berry removed the pistol from the glove compartment of the Appellant's car prior to the shooting.
>
> Further, the State failed to establish that the Appellant possessed the same criminal intent as that of the principal in the first degree. The evidence did not demonstrate that the Appellant encouraged, assisted or facilitated the shooting committed by Mr. Berry. To the contrary, the evidence established that the Appellant attempted to act as a peacemaker; that during his discussion with Dickie Rhodes, the Appellant asked him to "chill out;" and that by the conclusion of their discussion, witnesses testified that the matter appeared to be resolved. It is undisputed that it was Mr. Berry who fatally shot Dickie Rhodes and wounded Jesse Rhodes. Up until that moment, the situation had been peacefully handled by the Appellant. The only questionable conduct on the Appellant's part was that he was driving the car which fled the scene after Mr. Berry shot his victims, and that the Appellant was driving the car when Mr. Berry continued shooting Jesse Rhodes' truck as Mr. Rhodes chased the threesome. Again, however, there was no evidence offered that the Appellant had prior knowledge of Mr. Berry's plan, or that the Appellant encouraged or incited Mr. Berry's continuing conduct. Consequently, due to the lack of evidence by the State that the shooting was the result of concerted criminal plan or venture which included the Appellant, we simply cannot attribute Mr. Berry's unanticipated actions as a principal in the first degree to the Appellant.

*Kirkland,* 191 W.Va. at 593, 447 S.E.2d at 285.

In the case of *State v. Mayo,* 191 W.Va. 79, 443 S.E.2d 236 (1994), the Court reversed Mr. Mayo's conviction of second degree murder, attempted second degree murder, and unlawful wounding arising from his presence when Mr. Berry shot Dickie and Jesse Rhodes. We reasoned that there was no evidence to suggest that the killing of Dickie Rhodes and the wounding of his son were part of any concerted plan. Also,

> there was no evidence that Mr. Berry planned in advance to kill the victim or that the defendant assisted or encouraged Mr. Berry. Indeed, until the moment that Mr. Berry cursed Dickie Rhodes and then shot him, the event could not have been anticipated. There was no prior unlawful

activity on the part of anyone before the event. Accordingly, there was no evidence that the defendant "knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Fortner*, 182 W.Va. at 356, 387 S.E.2d at 823.

*Mayo*, 191 W.Va. at 85, 443 S.E.2d at 242. In his brief, the appellant emphasizes that the defendant in *Mayo* actually carried a gun to the scene of the crime, unlike the appellant. Nevertheless, this Court found insufficient evidence to support Mayo's conviction.

This Court finds the material facts of *Kirkland* and *Mayo* distinguishable from the facts in the instant case, and we decline to apply the reasoning in those cases here. Unlike in *Kirkland* and *Mayo*, the appellant had a history of animosity with one of the victims and even had a physical confrontation with the victim a short time before the shooting. Also, while the shooting in *Kirkland* and *Mayo* appears to have been unanticipated, a rational trier of fact could infer that the shootings of Murphy and Painter were planned in advance from evidence that the initial shots were fired from the appellant's vehicle almost immediately upon encountering the victims. Thus, we find our analysis in *Kirkland* and *Mayo* inapplicable to this case.[2]

The appellant in his brief also discusses the case of *People v. Taylor*, 244 Ill.App.3d 152, 184 Ill.Dec. 878, 614 N.E.2d 79 (1993), which was relied upon by this Court for support in the *Mayo* opinion. The relevant facts in *Taylor* were as follows:

Three of the defendant's friends came to his home and picked him up in their car. One of the men told the defendant that he was searching for and wanted to kill the victim because the victim had been in a fight with the man's younger brother. They drove around and found the victim. The man who had been looking for the victim got out of the car and shot him. They fled from the scene, but then drove back and fired a shot in the air. When the police arrived, the four men fled. The trial court found the jury's verdict of murder

was correct because the defendant got into the car knowing that one of the men in the car was seeking the victim to murder him. *Mayo*, 191 W.Va. at 84, 443 S.E.2d at 241. The Illinois appellate court reversed the appellant's conviction based on insufficiency of the evidence. The court reasoned,

In this case, the evidence provided by the State proved that defendant did nothing more than ride in a vehicle in which the shooter was present. While defendant gave conflicting testimony regarding his knowledge of why [the shooter] drove to the scene of the shooting, and whether [the shooter] had a gun, it is clear that defendant did not participate in any act which attributed [sic] to the shooter's objective of murdering [the victim]. The record is clear that defendant did not have a weapon, did not participate in planning or executing any plan to murder [the victim] or provide instruments in furtherance of that plan.

*Taylor*, 244 Ill.App.3d at 158, 184 Ill.Dec. 878, 614 N.E.2d at 83.

However, subsequent to this Court's opinion in *Mayo*, the Supreme Court of Illinois reversed the appellant court's finding of insufficient evidence in *Taylor*. In doing so, the court explained:

According to Taylor's statements to the police, he was aware, prior to the actual shooting, that [the shooter] wanted to kill [the victim], that [the shooter] was armed with a weapon, and that [the shooter] had instructed Page to drive to find the victim. Knowing this, Taylor voluntarily stayed with the group. After the shooting, Taylor remained with the group and was aware that [the shooter] was going to his house to get another weapon. Moreover, he returned to the scene of the shooting with the group and then fled when the police arrived....

At no time did Taylor discourage [the shooter] from killing the victim or indicate his disapproval of the commission of the crime. Not only was Taylor present dur-

---

2. The appellant also cites *State v. Haines*, 156 W.Va. 281, 192 S.E.2d 879 (1972) and *State v. Hoselton*, 179 W.Va. 645, 371 S.E.2d 366 (1988) as cases that support his argument that the evidence is insufficient to support his convictions. We do not find these case instructive.

ing the perpetration of the offense, he maintained a close affiliation with [the shooter] after the shooting, failed to report the crime, and fled the scene. Therefore, taking into account Taylor's actions surrounding the perpetration of the crime, we find that the trier of fact, the trial judge in this case, could have rationally concluded that Taylor was part of a common design to murder the victim, to which he assented, and therefore was guilty of the murder of [the victim] based on accountability.

*People v. Taylor,* 164 Ill.2d 131, 142, 207 Ill.Dec. 1, 646 N.E.2d 567, 572 (1995).

Similarly, in the instant case there is evidence that the appellant may have been aware of a prior disagreement between Stewart and the victims. According to the appellant's post-arrest statement to Trooper Mankins, "Jeff Stewart said, you know, he had had some dealings with [Murphy and Painter] before; and he wasn't cutting them off no more on something. I don't know what the hell that was about; and he went into Matt's room and got a gun, a shotgun." Nevertheless, the appellant drove Bush and Stewart to Murphy's residence. Moreover, the appellant failed to report the shooting of Murphy and Painter. After arriving home immediately after the shootings, the appellant informed the police that his truck was damaged by gun shots. However, he failed to indicate that anyone had been shot despite the fact that he told Trooper Mankins that, after the first shot was fired from his truck, "Mike spun, you know, and like down on his knees but he was still, you know, everybody was still shooting." While it is true that the appellant testified at trial that he did not see Murphy fall, credibility determinations and the resolution of conflicts in testimony are for the jury.

The appellant also points to the fact that his conduct after the commission of the crimes, which is a factor to be considered in determining the guilt of a principal in the second degree under *Fortner,* supports a finding that he is not guilty of the crimes of which he was convicted. The appellant emphasizes that Stewart and Bush restrained the liberty of witnesses to the shooting, threatened them, and concealed the murder

weapon. In contrast, there is no evidence whatsoever that the appellant had any involvement in these activities. While this may be true, conduct after the commission of the crime is only one factor to be considered in determining guilt. As we have explained above, there are several other factors such as the appellant's presence at the time and place the crime was committed, the appellant's association with one of the victims, and the appellant's friendship with one of the co-defendants which are sufficient to support a finding of guilt.

■ Finally, the appellant asserts that the State failed to establish that he possessed the same criminal intent of the shooters or that he had the requisite malice for a second degree murder conviction. Concerning the element of malice, "our case law has indicated that the terms malice and intent may be used interchangeably." *State v. Davis,* 220 W.Va. 590, 594, 648 S.E.2d 354, 358 (2007) (footnote omitted). To be convicted as an aider and abettor, the State must demonstrate that the defendant "shared the criminal intent of the principal in the first degree." *State v. Harper,* 179 W.Va. 24, 29, 365 S.E.2d 69, 74 (1987) (citations omitted). "In this regard, the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Fortner,* 182 W.Va. at 356, 387 S.E.2d at 823 (citations omitted).

We believe that the evidence is sufficient for a reasonable jury to conclude that the appellant knowingly intended to assist the design of the perpetrator(s). Again, the evidence indicates that the appellant was not only present at the scene of the crime but that he transported the shooter(s) to the crime scene and then assisted them in fleeing the scene after the killing of Murphy and Painter. Further evidence from which a rationale trier of fact could find the intent on the part of the appellant is the enmity between the appellant and Painter and their confrontation on the day of the crimes; the appellant's close friendship with co-defendant Bush; and the appellant's knowledge that Jeff Stewart took a shotgun to Murphy's

residence. Accordingly, we reject the appellant's assertion of insufficient evidence to show intent and malice.

For the foregoing reasons, we believe that, after reviewing the above evidence in the light most favorable to the prosecution and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, a rational trier of fact could find beyond a reasonable doubt that the appellant is guilty of second degree murder in the killings of Mike Murphy and Travis Painter. In other words, this Court is unable to conclude from a review of the record that there is no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. Accordingly, we find sufficient evidence to support the jury's finding of guilt.[3]

### B. Alleged Instructional Error

Next, the appellant contends that the jury was improperly instructed. Although there were no objections to the jury instructions below, the appellant now asserts that the errors are of such magnitude as to constitute plain error.

■■■■■ In reviewing alleged instructional error, we are guided by the following standard:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syllabus Point 4, *Guthrie.* Concerning the applicability of the plain error doctrine, we have described plain error as follows:

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus Point 7, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996). Furthermore, according to Syllabus Point 7 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Thus, our initial inquiry is whether there is error in the jury instructions.

■■■■ The appellant claims that the trial court failed to give a complete and proper instruction with regard to the elements of second degree murder. Specifically, the appellant asserts that the court failed to inform the jury that under the concerted action theory of culpability, the evidence must be sufficient to show that the defendant "is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." We find no merit to the appellant's claims of error.

Our review of the trial transcript indicates that the trial court correctly instructed the jury that "[m]urder in the second degree is the unlawful, intentional killing of another, with malice, but without deliberation or premeditation." *See State v. Slonaker,* 167

---

**3.** The appellant alleges other error as part of his sufficiency of the evidence argument such as insufficient evidence to support an instruction on second degree murder and error in denying the appellant's motion to dismiss/motion for judgment of acquittal. Our conclusion that there was sufficient evidence to support the guilty verdict also disposes of these allegations.

W.Va. 97, 102, 280 S.E.2d 212, 215 (1981) (defining second degree murder as "the unlawful killing of another with malice." (Citation omitted)). Concerning the concept of "concerted action," the jury was instructed that,

> However, it is not necessary for Eric Allan [sic] Foster to do any particular act constituting any element of the crime of murder in order to be found guilty under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to prove, beyond a reasonable doubt, that he shared criminal intent and acted together with Matthew Wayne Bush or Jeffrey Wayne Stewart, or anyone who did the acts necessary to constitute the crime, pursuant to a common plan or purpose to commit the crime.

Therefore, we find that the jury was properly instructed that the evidence must be sufficient to show that the appellant acted together with another who did the acts necessary to constitute the crime pursuant to a common plan, purpose or scheme.

The appellant also contends that the trial court failed to adequately define or explain the concept of "acting in concert with" or "concerted action." The trial transcript shows that the lower court instructed the jury, in addition to the paragraph quoted above, as follows:

> The State is required to prove beyond a reasonable doubt the actual presence of the Defendant at the time and place of the alleged crime.

> Merely witnessing or being present at a crime, without intervention, does not make a person a party to its commission, unless his interference was a duty and his non-interference was one of the conditions of the commission of the crime, or unless his non-interference was designed by him and operated as an encouragement to or the protection of the perpetrator.

> Proof that the Defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the Defendant's association with or relation to other persons present and his conduct both before and after the commission of the crime.

\* \* \*

> Under the concerted-action principle, a defendant who is present at the scene of the crime and, by acting with another, contributes to the criminal act is criminally liable for such offense as if he were the sole person committing the crime.

We find this instruction consistent with our explanation of the concept of "concerted action" in *Fortner*. Accordingly, we reject the appellant's assigned error with regard to instruction on the "concerted action" theory.

Last, the appellant complains that the jury was not instructed on the various means by which a person can be assigned criminal culpability including as a principal in the first degree, and principal in the second degree. We find that the trial court did not err in not giving such an instruction in light of the fact that the trial court gave a proper instruction on the concerted action theory of criminal liability. Further, the appellant was not harmed by any failure to give the instruction inasmuch as the appellant is subject to the same punishment whether he is found to be a principal in the second degree or a principal in the first degree. *See State v. Duncan*, 179 W.Va. 391, 395, 369 S.E.2d 464, 468 (1988) (explaining that "any error in failing to instruct the jury as to a principal in the second degree was harmless because the appellant was subject to the same punishment whether the jury viewed her role . . . as that of a principal in the first degree or a principal in the second degree." (footnote omitted)); Syllabus Point 11, *Fortner* (holding that "[u]nder the concerted action principal, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator."). Therefore, for the reasons stated above, we find no error in the instructions given to the jury.

### C. Alleged Juror Bias

█ Third, the appellant claims that the trial court committed reversible error in empaneling Juror Selbe for the reason that Juror Selbe's husband was recently prosecut-

ed for the domestic battery of Juror Selbe by the prosecutor in the appellant's case. Again, the appellant did not object to empaneling Juror Selbe at trial, thus we will also review this assignment of error under the plain error doctrine.

■■■ Our standard for considering allegations of jury bias is found in Syllabus Point 4 of *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996), where we held:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

With regard to Juror Selbe, the following exchange occurred during *voir dire:*

> THE COURT: Do any of you know any of them from any business, any other business or social relationships?
>
> (Prospective Juror Selbe so indicates.)
>
> THE COURT: Yes, ma'am.
>
> PROSPECTIVE JUROR SELBE: I had a case with my husband.
>
> THE COURT: Okay. Come up and tell us about it.
>
> (Prospective Juror Selbe joins counsel, and Defendant, at benchside.)
>
> PROSPECTIVE JUROR SELBE: It was a domestic battery case.
>
> THE COURT: Okay, and—
>
> PROSPECTIVE JUROR SELBE: It was him.
>
> THE COURT: Mr. McMillion represented you in that—
>
> PROSPECTIVE JUROR SELBE: Yes.
>
> THE COURT:—or against you?
>
> PROSPECTIVE JUROR SELBE: No. He represented me. It was a month ago, I guess.
>
> THE COURT: Is it over with?
>
> PROSPECTIVE JUROR SELBE: Yeah, it's done over with.

THE COURT: The fact that the State represented you in that case, would that in any way cause you to favor or disfavor the State?

> PROSPECTIVE JUROR SELBE: No.
>
> MR. HURLEY: What kind of case was that, ma'am?
>
> PROSPECTIVE JUROR SELBE: A domestic.
>
> MR. HURLEY: Domestic battery and he represented you?
>
> PROSPECTIVE JUROR SELBE: Uh-huh (yes), he represented me.
>
> MR. HURLEY: How long did this case go on? Was it fairly brief, or was—
>
> PROSPECTIVE JUROR SELBE: Yes, it was fairly brief.
>
> MR. HURLEY: Is that the only occasion that you had hired Mr. McMillion?
>
> PROSPECTIVE JUROR SELBE: Well, he—
>
> THE COURT: He represented the State; it was a criminal case.
>
> MR. HURLEY: Okay. How long ago was that?
>
> PROSPECTIVE JUROR SELBE: A month and a half or two months maybe.
>
> MR. HURLEY: Do you think your work with him would cause you to favor his position more than someone on the defense?
>
> PROSPECTIVE JUROR SELBE: No.
>
> THE COURT: Okay, thank you, ma'am. You may go back.

■■ In support of this alleged error, the appellant cites Syllabus Point 6 of *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), in which this Court held:

> A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

The appellant's argument on this issue is as follows:

> [Juror Selbe] enjoyed far more than a social or even consanguineal relationship with the prosecutor. The juror's interests were represented by the actual prosecutor handling the Appellant's case in court proceedings. Further, the matter on which her interests were represented by the prosecutor were in connection with a very personal matter, domestic battery, and the representation occurred at a time very close to the time of the Appellant's trial.
>
> The importance of an attorney-client relationship (and the relationship between a prosecutor and the victim of a crime is every bit as close, even though a prosecutor is technically representing the state) cannot be underestimated in this context.

The appellant also contends that the trial court and defense counsel below failed to conduct a meaningful inquiry into the question of whether Juror Selbe could remain impartial.

Under *Beckett*, per se disqualification may occur when a prospective juror has a consanguineal, marital, or social relationship with a law enforcement official actively involved in the prosecution of the case.[4] In the instant case, the appellant claims that a relationship closer than a social relationship existed between Juror Selbe and the prosecutor which would automatically disqualify Juror Selbe. We disagree. There is no indication from the record that Juror Selbe and the prosecutor were more than mere acquaintances.

In the recent case of *State v. Mills*, 221 W.Va. 283, 654 S.E.2d 605 (2007), the question was whether a juror should have been struck for cause on the ground, *inter alia*, that a juror and a police officer who was a potential witness for the State both worked as volunteer firefighters with the same volunteer fire department. This Court found no error in failing to strike the juror for cause, explaining that:

> The record in this case shows that Mr. Mills [the appellant] failed to establish the

"social relationship" requirement of *Beckett*. The evidence in this case only demonstrated that [the juror and the potential witness] worked for the same volunteer fire department.... The "social relationship" requirement of *Beckett* is not satisfied by this evidence alone. *See State v. Campbell*, 359 N.C. 644, 617 S.E.2d 1, 36 (2005) ("Mere acquaintance with a witness is not enough to require excusal for cause."). The mere fact that people work together does not mean that they like each other or socialize on or off the job. It is this type of evidence that is needed to help establish the "social relationship" requirement of *Beckett*.

*Mills*, 221 W.Va. at 288, 654 S.E.2d at 610. Likewise, we believe that the mere fact that the prosecutor in the appellant's case prosecuted Juror Selbe's husband for domestic battery does not establish the type of close social relationship between Juror Selbe and the prosecutor that may require disqualification under *Beckett*.

With regard to the appellant's allegation that his defense counsel and the trial court failed to conduct an effective *voir dire*, we explained in *Mills* that,

> The record in this case speaks for itself in showing that Mr. Mills failed to ask probing questions as to the nature of [the prospective juror's relationship with the potential witness]. In fact, Mr. Mills did not ask any direct questions about [the relationship]. *See State v. Worley*, 179 W.Va. 403, 416, 369 S.E.2d 706, 719 (1988) ("*Beckett* would preclude any claim of error since there were no particular facts developed to demonstrate any bias on the part of the juror."). As pointed out by an appellate court, "disclosure during the trial that a juror knows ... a witness ... is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict." *State v. Mayeux*, 949 So.2d 520, 533

---

4. In *State v. Mills*, 211 W.Va. 532, 538, 566 S.E.2d 891, 897 (2002), this Court indicated that "[w]e traditionally have not applied [*Beckett* ] to mandate the automatic disqualification of a pro-spective juror merely because of a ... social relationship with an employee of a law enforcement agency who is actively involved in the prosecution of the case."

(La.Ct.App.2007).... Thus, based on the record in this case, we find that Mr. Mills failed to satisfy the requirements of *Beckett*.

*Mills*, 221 W.Va. at 288, 654 S.E.2d at 610. Similarly, the appellant failed to ask probing questions of the exact nature of the relationship between Juror Selbe and the prosecutor below. Based on the record before us, there simply is insufficient information to demonstrate either a social relationship that, under *Beckett*, may require disqualification or actual bias on the part of Juror Selbe.[5]

### D. Alleged Ineffective Assistance of Counsel

■ The appellant further maintains that his trial counsel was *per se* ineffective in failing to argue critical issues, in voluntarily waiving the appellant's right to assert self-defense as an alternative defense, in failing to offer an instruction regarding the concerted action concept, and in delivering a closing argument that was substandard as a matter of law in that "it cannot be deemed to have passed even minimal standards for effective persuasion or elucidation of the issues, both with regard to quantity and substance." Specifically, the appellant asserts that counsel failed to argue the issues of intent, malice, and concerted action.

■ This Court has held:

It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syllabus Point 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992). After a careful review of the record, we conclude that this is not one of those extremely rare cases in which we are able to find ineffective assistance of counsel *per se*. With regard to any alleged ineffectiveness in failing to offer jury instructions, we have found no error in the instructions given at trial. Also, counsel's decision not to assert self-defense as an alternative defense is the type of tactical decision that counsel should have the opportunity to explain in a habeas corpus hearing. Finally, while counsel's closing argument was admittedly brief and failed to refer to elements of concerted action liability, as noted above, the jury was properly instructed on the elements of concerted action. Thus, we cannot say that counsel's conduct at trial constituted ineffective assistance of counsel *per se*. Therefore, we find no reason to deviate from our general rule that an ineffective assistance of counsel claim should be brought in a habeas corpus proceeding.

### E. Alleged Cumulative Error

■ As his fifth assignment of error, the appellant posits that the cumulative effect of numerous errors prevented him from receiving a fair trial so that his convictions should be set aside. According to the appellant, these numerous errors include jurors who had personal relationships with parties and witnesses at trial, the failure of the trial

---

5. Although the bulk of the appellant's argument on juror bias concerns Juror Selbe, he mentions several other potentially disqualifying relationships among the jury panel including the fact that Jurors Dorsey and Williams knew the prosecutor on a first-name basis and that Juror Williams also knew defense counsel; Juror Jackson had known one of the testifying law enforcement officers all her life and still sees him "once in a while." Juror Sparks knew another law enforcement officer who testified at trial; Juror Hall was married to an ex-wife of one of the testifying law enforcement officers; Juror Bush had previously worked with the mother of co-defendant Matt Bush; and Juror Neff previously lived next door to and was acquainted with the family of Travis Painter. Juror Neff also was second cousins with a witness at trial. The appellant argues, that, with the exception of Juror Selbe, any one of these other jury conflicts alone might be insufficient to constitute grounds for reversal. However, says the appellant, the cumulative effects amounted to a tainted jury.

Significantly, each of these jurors, like Juror Selbe, unambiguously opined that he or she could render an impartial verdict, and defense counsel made no motions to strike any of the prospective jurors. Thus, we find no reason to conclude that any of these relationships or all of them together caused reversible error.

court to give an adequate instruction on the concept of concerted activity, and the gross failures of trial counsel to provide effective representation.

 We reject this assignment of error. Under our law, "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus Point 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). Simply put, the record before us does not reflect the presence of numerous errors. Specifically, we have found no instructional error, no error in failing to strike jurors for cause, and no ineffective assistance of counsel per se. Having failed to find numerous errors, we conclude that the cumulative error doctrine is not applicable.

### F. Alleged Unconstitutional Sentence

 Finally, the appellant asserts as error his consecutive forty-year sentences. According to the appellant, he is a high school graduate, a young man, a father, an employed worker who had never been convicted of a prior felony, and the State was unable to show his direct participation in the killing of the victims. Therefore, his sentence shocks the conscience and offends fundamental notions of human dignity.

 This Court has outlined two tests for determining whether a sentence is so disproportionate to a crime that it violates our constitution. The appellant claims that his sentence violates the subjective test. Under the subjective test, this Court "asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v.*

*Cooper*, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983). "In making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense." *State v. Adams*, 211 W.Va. 231, 233, 565 S.E.2d 353, 355 (2002) (citations omitted).

While the appellant was sentenced to the maximum penalty for second degree murder permitted under W.Va.Code § 61-2-3 (1994), which is certainly a significant sentence, this Court is unable to find that the sentence shocks the conscience under the circumstances. There was sufficient evidence for the jury to determine that the appellant was present at and aided and abetted the intentional and violent killing of two persons with the use of firearms. In light of the fact that the appellant's crimes resulted in two deaths, we cannot conclude that the appellant's sentences are constitutionally improper.[6]

### III.

### CONCLUSION

For the reasons stated above, we affirm the appellant's convictions of two counts of second-degree murder and his consecutive forty-year sentences.

Affirmed.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision in this case.

Judge MOATS, sitting by temporary assignment.

---

6. The appellant also urges this Court to require appointment of two lawyers to represent criminal defendants in capital cases. The appellant's argument on this issue is based in part on an alleged lack of uniformity among the circuits with respect to the number of lawyers appointed in capital cases as well as the appellant's claim that his trial counsel was ineffective. Significantly, the issue was not raised below. Also, as determined above, the appellant's allegations of ineffective assistance of counsel are not apparent on the face of the record. Thus, we decline to address this matter at this time.